J-S34019-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :   IN THE SUPERIOR COURT OF
                                             :          PENNSYLVANIA
                                             :
          v.                                  :
                                             :
                                             :
                                             :
SHANE LENELL MCCROMMON             :
                                             :
          Appellant                          :    No. 1479 WDA 2018

Appeal from the PCRA Order Entered September 10, 2018
In the Court of Common Pleas of Westmoreland County Criminal Division
at No(s):  CP-65-CR-0004830-2013,
CP-65-CR-0005377-2014

BEFORE:   DUBOW, J., McLAUGHLIN, J., and COLINS*[1], J.

MEMORANDUM BY McLAUGHLIN, J.:          **FILED SEPTEMBER 1, 2020**

Shane Lenell McCrommon appeals the denial of his request for relief

under the Post Conviction Relief Act ("PCRA"). **See** 42 Pa.C.S.A. §§ 9541-

9546. The PCRA court denied the petition, concluding that there were no

meritorious issues raised in the petition. We affirm.

The facts relevant to this appeal are as follows. We do not include facts

pertaining to the docket number ending in 5377, as they are unrelated to this

appeal. McCrommon's issues challenge his judgment under the docket number

ending in 4830.

> [O]n the evening of June 26, 2012, Jeffrey Edwards (hereinafter
> "Victim") travelled with Lisa Schreckengost to her residence after
> purchasing and smoking crack at a "trap house" known as
> "Larry's." Victim and Schreckengost went inside of the residence
> upon arrival. [McCrommon] was present inside the "large

_____

* Retired Senior Judge assigned to the Superior Court.

bedroom" of the residence with "Big Jay" and Takayla Witcher. [McCrommon] was allegedly upset with Victim because he felt Victim was "stepping on his toes when it came to selling drugs." [McCrommon] requested that Victim speak with him. Schreckengost remained in the "back bedroom" of the residence with Michelle Monfredi. Victim proceeded into the "front bedroom" with [McCrommon]. [McCrommon] then allegedly asked Victim if he was "back-dooring" him. [McCrommon] subsequently punched Victim in the face and repeatedly struck him. Witcher testified that [McCrommon] was "beating" and kicking Victim. She also claimed that [McCrommon] "ran over" Victim's head with a vacuum. Witcher alleged that she told [McCrommon] to stop and he looked at her "as if [she] said something wrong." Additionally, she testified that "Big Jay" did not say or do anything while [McCrommon] was striking Victim.

Schreckengost testified that she heard yelling and a "big thump, like something hitting the wall" coming from the "big bedroom." At one point, she exited a small room and observed [McCrommon] kicking Victim in his side and face. She estimated that this occurred for seven (7) to ten (10) minutes. Monfredi testified that she heard "grunting and moaning" coming from the bedroom "like, somebody was getting beat up." She estimated that these sounds continuously occurred for about five (5) to ten (10) minutes. Witcher testified that, after this incident occurred, [McCrommon] paced the room while speaking out loud to himself. She recalled [McCrommon] making statements regarding "Green Eyes back-dooring him." She also claimed that [McCrommon] told them not to leave and he warned that they "better not say nothing." Schreckengost testified that Victim's body was "propped up" once the incident had ended and Jay and Monfredi began to pour water on him. She further alleged that [McCrommon] offered Victim a gram of crack to "wake him up." Schreckengost testified that Victim was gasping for air. Witcher described Victim's body as "lifeless" and she recalled seeing blood on Victim's head and lip. [McCrommon] subsequently left and allegedly instructed Monfredi to "take care of it." "Big Jay" and Witcher also left the residence. Schreckengost testified that both her and Monfredi changed Victim's clothes. None of the individuals who were present at the household contacted 911.

On the following day, Raymond Nelson testified that he received a call to report to Schreckengost's residence and drive an individual named Katrina to the hospital. Once he had arrived at

the residence, however, he discovered that Victim was actually the individual who needed to be transported to the hospital. Katrina directed Nelson to Victim. Nelson testified that Victim was unconscious and not moving. He described Victim's hands as "stiff," Victim appeared to have a "hole" in his lip, his eyes were "rolling," and he had defecated and urinated on himself. Nelson placed Victim inside of his vehicle and drove him to the hospital.

Shortly after Victim arrived at the hospital, he appeared to be "shaking" and "convulsing." Registered nurse, Leighanne Saliba, testified that Victim had bruising on his face, a small laceration on his lip, his lips were swollen, and he was unconscious. She stated that Victim only responded to painful stimuli by "posturing." Saliba defined "posturing" as a "physical response of the body to painful stimuli when there's a brain injury." Victim was later transported by Life Flight to Allegheny General Hospital. Neurosurgeon, James Burgess, testified that an MRI was performed on Victim and it revealed a spinal cord injury and trauma to the brain. Surgery was performed on Victim. Victim was ultimately transferred to the Forbes Nursing Facility and he later died on November 9, 2012. Victim's sister, Cheryl Edwards, testified that she often visited Victim while he was at the hospital and nursing facility. During these visits, Victim did not talk, he was unable to do anything on his own, and he remained curled in a "fetal-type position." Dr. Kawita Vichare testified that, while at the Forbes Nursing Facility, Victim developed a bladder infection and pneumonia. Victim had to be placed on a ventilator, he was fed through a feeding tube, and he required "complete care" from staff. Victim also showed signs of encephalopathy and quadriplegia. Dr. Cyril Wecht opined that Victim's immediate cause of death was the development of pneumonia. Additionally, he found that Victim's underlying cause of death was posttraumatic encephalopathy. Dr. Wecht testified that this is a term given to "brain injury, as a result of some kind of trauma."

Amended Notice of Intention to Dismiss Motion for [PCRA] ("Amended 907 Notice"), filed 7/10/18, at 2-4.

The jury convicted McCrommon of third-degree murder and aggravated assault. The trial court sentenced McCrommon to 20 to 40 years' incarceration and we affirmed the judgment of sentence. *See Commonwealth v.*

*McCrommon*, 156 A.3d 333 (Pa.Super. filed Aug. 10, 2016) (unpublished memorandum).

McCrommon then filed the instant, timely, *pro se* PCRA petition challenging the judgment under the docket number ending in 4830. His PCRA petition did not address the judgment under the other docket number, ending in 5377. The PCRA court appointed counsel, who filed a **Turner/Finley** letter and a motion to withdraw as counsel.[2] The PCRA court issued a notice of intent to dismiss McCrommon's petition without a hearing, and McCrommon responded, raising claims of ineffective assistance of PCRA counsel.[3] **See** Pa.R.Crim.P. 907. The PCRA court then denied the PCRA petition and granted counsel's motion to withdraw. This timely appeal followed.

McCrommon raises the following issues:

I.      Whether the PCRA court abused its discretion when it did a wholesale adoption of PCRA counsel's **Turner/Finley** no merit letter?

II.     Whether the PCRA court abused its discretion when it declared that [McCrommon] did not act under a sudden and intense passion resulting from serious provocation without citing any standard of review?

III.    Whether the PCRA court abused its discretion when it declared that the facts set forth during trial do not support

---

[2] **See Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988); **Commonwealth v. Finley**, 550 A.2d 213 (Pa.Super. 1988) (*en banc*).

[3] The PCRA court filed an amended Rule 907 notice on July 10, 2018. However, it was filed to "reflect the proper date in which the Opinion was signed, which was actually July 6, 2018. The rest of the Opinion remains unchanged." **See** Amended Rule 907 Notice, at 1 n.1.

a voluntary manslaughter instruction regarding the heat of passion defense?

IV.     Whether trial counsel was ineffective for failing to request a voluntary manslaughter instruction; which violated [McCrommon's] due process, fair trial, jury trial and right to counsel rights under federal and state provisions?

V.      Whether PCRA counsel was ineffective for failing to raise trial counsel's ineffectiveness for failing to request a voluntary manslaughter jury instruction.[sic] Which violated [McCrommon's] right to counsel under federal and state provision and Pa.R.C.P.-904?

VI.     Whether PCRA counsel was ineffective for failing to raise trial counsel's ineffectiveness for failing to request a corrupt and polluted source charge regarding Commonwealth witnesses Lisa Schreckengost and Michelle Monfredi's testimony; which violated [McCrommon's] due process, jury trial, and right to counsel rights guaranteed him under federal and state provisions and Pa.R.C.P. 904?

VII.    Whether PCRA counsel was ineffective for failing to raise trial counsel's constructive abandonment of [McCrommon] during critical stage of the proceedings; which deprived [McCrommon] of representation, violated [McCrommon's] right to due process, right to counsel rights guaranteed him under federal and state provisions and Pa.R.C.P.-904?

VIII.   Whether the PCRA court abused its discretion in failing to hold an evidentiary hearing on claims where [McCrommon] had raised genuine issues of material fact that entitle him to relief?

IX.     Whether there are genuine issues of material fact which preclude quashal of the appeal?

McCrommon's Br. at 2 (unnecessary capitalization omitted).

We address McCrommon's last issue first, as it goes to whether this case is properly before this Court. McCrommon filed a timely notice of appeal, but put both lower court docket numbers on it, *i.e.*, CP-65-CR-0004830-2013 and

CP-65-CR-0005377-2014. This Court issued a rule on November 5, 2018, directing McCrommon to show cause why his appeal should not be quashed pursuant to **Commonwealth v. Walker**, 185 A.3d 969, 977 (Pa. 2018). There, the Pennsylvania Supreme Court announced a bright-line rule that "when a single order resolves issues arising on more than one lower court docket," an appellant must file separate notices of appeal, and the failure to do so requires us to quash the appeal. **Id.** McCrommon responded that **Walker** did not apply because "the substantive arguments that will be raised are related to a single docket number[,] *i.e.*[,] the controlling criminal case number namely No. 4830 C 2013[.]" **See** Response to Rule to Show Cause, filed 11/29/18, at 3.

We entered an order discharging the rule to show cause, but later placed the case on hold pending our *en banc* consideration of several cases implicating the **Walker** rule and the holding of **Commonwealth v. Creese**, 216 A.3d 1142 (Pa.Super. 2019). Those cases have now resolved and we have overruled **Creese** insofar as **Creese** held that "a notice of appeal may contain **only one** docket number." **See Commonwealth v. Johnson**, -- A.3d --, 2020 WL 3869723, at *5 (Pa.Super. 2020) (*en banc*) (emphasis in original). As the order from which McCrommon appealed only resolved issues arising at one docket number, and we have overruled **Creese**, we will not quash the instant appeal. We now address the merits of McCrommon's appeal.

McCrommon maintains that the PCRA court "abused its discretion by doing a wholesale adoption of PCRA counsel's **Turner/Finley** [n]o [m]erit

[l]etter." McCrommon's Br. at 13. He cites to **Commonwealth v. Glover**, 738 A.2d 460, 466 (Pa. 1999), noting that the **Glover** Court held "that the PCRA court cannot adopt counsel's **Turner/Finley** [n]o [m]erit [l]etter in lieu of a 1925—(a) Opinion." McCrommon's Br. at 13.

We review the denial of PCRA relief to determine "whether the findings of the PCRA court are supported by the record and free of legal error." **Commonwealth v. Abu-Jamal**, 833 A.2d 719, 723 (Pa. 2003).

This claim is meritless as **Glover** is inapplicable to the instant case. After counsel filed his **Turner/Finley** letter, the PCRA court issued an opinion pursuant to Rule 907. In this opinion, the court thoroughly discussed each of the issues presented in McCrommon's PCRA petition and explained that each issue was meritless. **See** Amended Rule 907 Notice. In lieu of a Pa.R.A.P. 1925(a) opinion, the court relied on "the Amended Notice of Intention to Dismiss dated July 10, 2018; and the Opinion and Order dated September 10, 2018[.]" **See** Decree Pursuant to Rule 1925(a), filed 10/24/18. Thus, the PCRA court did not adopt counsel's **Turner/Finley** letter in lieu of its 1925(a) opinion.

Next, McCrommon claims that the PCRA court erred in concluding that the facts of the case did not support that he acted under "a sudden and intense passion," as would have warranted a jury instruction for voluntary manslaughter, such that trial counsel was not ineffective for failing to request such an instruction. McCrommon's Br. at 14. He argues that "[i]t is common knowledge that individuals under the influence of cocaine exhibit erratic and

violent behavior[,]" and "the facts of this case indicate that [McCrommon] had a temper and came in contact with a Mr.[] Edwards who was under the influence of cocaine, had a quarrel which ignited a fight." *Id.* at 15.

A petitioner raising claims of ineffectiveness must overcome the presumption that counsel is effective by demonstrating the following:

1. the legal claim underlying the ineffectiveness claim has arguable merit

2. counsel's action or inaction lacked any reasonable basis designed to effectuate petitioner's interest;

3. counsel's action or inaction resulted in prejudice to petitioner.

*Commonwealth v. Becker*, 192 A.3d 106, 112-13 (Pa.Super. 2018). "A failure to satisfy any prong of the ineffectiveness test requires rejection of the claim of ineffectiveness." *Commonwealth v. Daniels*, 963 A.2d 409, 419 (Pa. 2009).

A jury instruction for voluntary manslaughter with respect to a "heat of passion" is appropriate where the evidence suggests "that, at the time of the killing, [a]ppellant acted under a sudden and intense passion resulting from serious provocation by the victim." *Commonwealth v. Sanchez*, 82 A.3d 943, 979 (Pa. 2013) (quoting *Commonwealth v. Montalvo*, 986 A.2d 84, 100 (Pa. 2009)) (alteration in original). "If any of these be wanting – if there be provocation without passion, or passion without a sufficient cause of provocation, or there be time to cool, and reason has resumed its sway, the killing will be murder." *Id.* at 980 (quoting *Commonwealth v. Hutchinson*, 25 A.3d 277, 315 (Pa. 2011)).

McCrommon's recitation of the facts is inaccurate and unsupported by the record, and the evidence here did not warrant a voluntary manslaughter instruction. There was no testimony of a triggering event that could qualify as adequate provocation. The testimony was clear that after McCrommon asked the victim if he was "back-dooring" him, McCrommon beat, punched, struck, and kicked the victim, and then proceeded to ram the victim's head with a vacuum cleaner. Thus, there was evidence of "passion" on McCrommon's part but no provocation by the victim. Therefore, as the PCRA concluded McCrommon was not entitled to a voluntary manslaughter instruction. **See Sanchez**, 82 A.3d at 979; **see also Hutchinson**, 25 A.3d at 315. To the extent McCrommon appears to raise a direct challenge to the trial court's refusal to give such an instruction, such a claim is not cognizable under the PCRA. **See** 42 Pa.C.S.A. § 9543.

McCrommon next argues that PCRA counsel was ineffective for failing to raise a claim of trial counsel's alleged ineffectiveness "for failing to request a corrupt and polluted source charge to the jury" for Commonwealth witnesses Schreckengost and Monfredi. McCrommon's Br. at 23. He maintains that they were his accomplices, and trial counsel should therefore have asked for such an instruction.

A corrupt source instruction "is warranted only in cases in which there is sufficient evidence to present a jury question with respect to whether the witness is an accomplice." **Commonwealth v. Collins**, 957 A.2d 237, 262 (Pa. 2008). "One merely present at the crime scene is not an accomplice . . .

- 9 -

nor is one who merely helps an offender try to escape arrest or punishment an accomplice." **Id.** at 263 (citation omitted). Rather, an accomplice is defined as follows:

> **(c) Accomplice defined.** – A person is an accomplice of another person in the commission of an offense if:
>
> > (1)   with the intent of promoting or facilitating the commission of the offense, he:
> >
> > > (i)      solicits such other person to commit it; or
> > >
> > > (ii)     aids or agrees or attempts to aid such other person in planning or committing it; or
> >
> > (2) his conduct is expressly declared by law to establish his complicity.

18 Pa.C.S.A. § 306(c).

Here, the PCRA court denied this claim, concluding that the instruction was not warranted because "[t]he facts that were presented during trial do not permit an inference that Schreckengost and Monfredi were accomplices." **See** Opinion and Order of Court, filed 9/11/18, at 6. It also concluded that "the facts do not indicate that they had any intent of promoting or facilitating the commission of the offense" or that they "participated in the commission or planning of the crime." **Id.**

We agree. Neither witness testified to promoting or facilitating McCrommon's violent assault of the victim. Both testified that they were in another room at the time of the assault and that it was McCrommon who alone

assaulted the victim, causing injuries that ultimately led to the victim's death. While there was testimony that they changed the victim's clothing and also poured water on the victim in an effort to clean him up, this evidence was insufficient "to present a jury question with respect to whether the witness[es] [were] accomplice[s]." **Collins**, 957 A.2d at 262. Neither action amounted to soliciting or aiding McCrommon, or agreeing or attempting to aid him, in planning or committing the attack. Rather, these acts occurred afterward. Therefore, the PCRA court did not err in denying this meritless claim. **See Daniels**, 963 A.2d at 419; **see also Commonwealth v. Spotz**, 896 A.2d 1191, 1210 (Pa. 2006) ("Counsel will not be deemed ineffective for failing to raise a meritless claim").

Next, McCrommon claims that PCRA counsel was ineffective for not raising trial counsel's alleged abandonment of McCrommon at the pretrial conference. He maintains this claim is of arguable merit because "[h]ere as in **Powell** [**v. Alabama**, 287 U.S. 45 (1932),] [trial counsel] had virtually no opportunity to investigate the facts and prepare a defense which could satisfy [McCrommon's] right to effective assistance of counsel." McCrommon's Br. at 35. At the pretrial conference, McCrommon stated that he was requesting a continuance because the day before the conference he had given trial counsel a new list of witnesses to investigate. **See** N.T., Pretrial Conference, at 6. McCrommon argues that the below portion of testimony from the pretrial conference establishes that trial counsel was unprepared for trial and therefore "incapable of representing [McCrommon] at trial:"

- 11 -

[Trial Counsel]: I am going to be asking for a continuance on [McCrommon's] behalf. I would like him to address the Court as well. But I do think it's necessary for me for the record to indicate several things.

Mr. McCrommon was originally represented by John Sweeney. He was permitted to withdraw in November of 2014. I was appointed to represent him, I believe, November 26th. At that time, the Commonwealth filed a new charge of solicitation to hinder prosecution. I think I was appointed the day before the preliminary hearing at Magistrate Pallone's in New Kensington. I met with Mr. McCrommon prior to the preliminary hearing that day. I did not get a chance or an opportunity to meet with Mr. Sweeney until sometime in December to obtain the discovery materials. And then due to some medical reasons, I was out of the office from the end of December to about the middle of January. So the reason I want to put this on the record is, I did not get to – Mr. McCrommon has been housed at SCI-Greene. I did not get to see him. I did not get to SCI-Greene to meet with him. So the first time that I really had sat down to kind of discuss this case at more length was when I went to the Westmoreland County Jail yesterday for about an hour-and-a-half and met with him.

*Id.* at 31 (citing N.T., Pretrial, at 2-4); 35.

This claim of ineffective assistance of counsel is meritless for a number of reasons. First, *Powell* is inapplicable to the case at hand. In *Powell*, "until the very morning of the trial no lawyer had been named or definitely designated to represent the defendants." *Powell*, 287 U.S. at 57. Thus, the Supreme Court held that "the failure of the trial court to give [the defendants] reasonable time and opportunity to secure counsel was a clear denial of due process." *Id.* at 65. Here, unlike *Powell*, counsel was appointed months before the trial. According to the docket, trial counsel was appointed in November 2014. The trial was held in the beginning of April 2015. In that time, counsel despite some medical issues, "reviewed the discovery materials"

and "felt that [he] had a grasp on what witnesses the Commonwealth would be calling and what to expect or anticipate." N.T., PreTrial Conference at 5.

Second, counsel did not ask for a continuance because counsel was generally unprepared, or had not had an opportunity to investigate, but rather because McCrommon gave him list of potential witnesses at the 11th hour. *See id.* at 11. It was McCrommon himself who told the court that he believed a continuance was necessary because he felt he did not have "enough" time to sit down with trial counsel. *Id.* at 10. He thus in effect conceded that counsel had already discussed the case with McCrommon, which coincides with counsel's statement that he had met with McCrommon the day before for about an hour and 30 minutes. *See id.* at 31. McCrommon also admitted on the record that he had given a new list of witnesses to trial counsel. *Id.* at 6. In denying the continuance, the trial court explained that McCrommon had had plenty of time to let counsel know of any potential witnesses *Id.* at 13. Based on the record, the PCRA court did not abuse its discretion in denying McCrommon's abandonment claim, as it lacks arguable merit.

Finally, McCrommon claims that the PCRA court abused its discretion by failing to hold an evidentiary hearing. He maintains that he raised at least "two substantial questions" warranting an evidentiary hearing. McCrommon's Br. at 37. He asserts one such question related to his claim that trial counsel was ineffective for failing to ask for a voluntary manslaughter jury instruction. Another allegedly relates to the ineffectiveness claim regarding the corrupt and polluted source instruction.

We review the denial of a request for an evidentiary hearing for an abuse of discretion. **Commonwealth v. Maddrey**, 205 A.3d 323, 327 (Pa.Super. 2019). "There is no absolute right to an evidentiary hearing on a PCRA petition, and if the PCRA court can determine from the record that no genuine issues of material fact exist, then a hearing is not necessary." **Id.** at 328 (quoting **Commonwealth v. Jones**, 942 A.2d 903, 906 (Pa.Super. 2008)).

Here, the existing record establishes that all of McCrommon's claims lack merit. There was no genuine issue of material fact, and the PCRA court did not abuse its discretion by not holding an evidentiary hearing. **Jones**, 942 A.2d at 906.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/1/2020